**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Adam JOSEPHS,<br><br>              Plaintiff,<br><br>      v.<br><br>AMENTUM SERVICES, INC., et al.,<br><br>              Defendants. | Civil Action No.: 1:25-cv-01477-SAG |

**DEFENDANTS AMENTUM SERVICES, INC.'S AND URS FEDERAL SERVICES INTERNATIONAL, INC.'S OPPOSITION TO RELATOR'S MOTION TO COMPEL**

Amentum Services, Inc. and URS Federal Services International, Inc. (the "Amentum Defendants") respectfully request that the Court deny Relator's Motion to Compel ("Motion" or "Mot.").

**INTRODUCTION**

The discovery requests at issue here represent an improper effort to expand this litigation far beyond the claims remaining following the Court's Motion to Dismiss decision. ECF 90. Indeed, even without that decision—which substantially pared back both the scope of the claims and the number of defendants—the requests are facially overbroad. For instance, as discussed in Section I below, Relator appears to be seeking information about every prime contract for goods and services that the Amentum Defendants have been awarded, even though the First Amended Complaint ("Complaint") only identifies two prime contracts, both under the Air Force Contract Augmentation Program V ("AFCAP V"). And Relator appears to be seeking information about every subcontract/subcontractor to the Amentum Defendants, even though the Complaint only named three subcontractors as defendants.

1

Relator's requests and this Motion are particularly inappropriate given this Court's Motion to Dismiss decision.  ECF 90.  Relator's assertion that the Amentum Defendants should be required to produce discovery "across their contracts" fails to acknowledge this Court's finding "*that all of the subcontracts pertinent to this case that Amentum awarded were awarded under the URS AFCAP V Contract*[.]"  ECF 90 at 10 (emphasis added).  Likewise, in seeking discovery regarding all of the Amentum Defendants subcontractors, Relator ignores the Court's (a) *dismissal of two of three subcontractor defendants* and (b) determination that scienter and conspiracy were adequately pled *because of the specific allegations concerning Dallas Aviation Inc.* ("Dallas Aviation").  *Id*. at 21-24.[1]  Thus, as discussed in Section II, Relator's broad requests cannot be reconciled with the Court's Motion to Dismiss decision, which substantially narrowed the scope of this action.

As discussed in Section III, it is apparent that Relator is on the type of fishing expedition that the Fourth Circuit specifically prohibits.  Moreover, Relator mischaracterizes the documents and information the Amentum Defendants have produced and have agreed to produce—a production that extends well beyond Relator's self-serving descriptions.  *See* Section IV below.  Finally, as discussed in Section V, Relator's broad requests are not proportional to the needs of this case.

Relator's Motion should be denied.

---

[1] Relator spends a significant amount of his Motion purporting to describe meet and confer efforts. Mot. at 2-3, 11-12.  The Amentum Defendants do not agree with Relator's recitation of those conferrals.  Nonetheless, the Amentum Defendants do not believe it is productive to make a point-by-point correction because the parties are at an impasse and the meet and confer record is not relevant to the Court's analysis.

**ARGUMENT**

**I.      Relator's Requests Are Overbroad and Not Reasonably Targeted**

Relator's discovery requests are untethered to the Complaint allegations (even before they were narrowed by the Court).  For example, most of Relator's discovery requests are not tied to the AFCAP V prime contracts identified in the Complaint.  Only Document Requests 1, 11, and 12 and Interrogatories 1 and 5 reference one or both of the AFCAP V prime contracts identified in the Complaint.  Otherwise, Relator asks for the identification of all contracts and subcontracts to provide goods and services to the Government, all claims submitted to the United States for goods or services, all descriptions of goods and services that were provided to the Government, and all assurances concerning goods and services provided to the Government.  *See, e.g.*, Interrogatories 2, 3, 4, 7, 8.

Likewise, most of Relator's requests extend beyond the three subcontractors identified in the Complaint (prior to the Court's Motion to Dismiss decision, which dismissed two of those subcontractors).  In fact, while a few of the Document Requests discuss "Subcontractor Defendants," none of Relator's Interrogatories uses that term.

Thus, even if the Court's Motion to Dismiss decision had not limited the Complaint allegations, Relator's discovery requests are inappropriately broad and disproportionate to the claims asserted in the Complaint.  This is the very approach that local guidance warns against: "[T]he reality appears to be that with respect to certain discovery, principally interrogatories and document production requests, lawyers customarily serve requests that are far broader, more redundant and burdensome than necessary to obtain sufficient facts to enable them to resolve the case through motion, settlement or trial."  *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) (partially quoted in D. of Md. Local Rules, App'x D).

**II.      This Court's Motion to Dismiss Decision Narrowed Relator's Claims**

The Court's Motion to Dismiss decision dismissed parties and claims from this action, including all claims against DynCorp International LLC (the awardee of prime contract FA 8051-20-D-0002), all claims against two subcontractor defendants (TD Supply Specialists, LLC and Freedom Air Industries, Inc.), and Relator's "bid rigging" and "price sharing" theories. ECF 90 at 2. Following that decision, the remaining claims are limited to the Amentum Defendants (the awardee of prime contract FA 8051-20-D-0001 and its successor), one subcontractor defendant (Dallas Aviation), and one theory of alleged anti-competitive behavior involving those parties (the so-called "subcontract stacking" claim). *Id*.

Relator's discovery requests fail to account for this narrowing. The best evidence of that is the fact that Relator re-served the exact same discovery requests that he had prepared ***before*** the Court dismissed parties and claims from this action. Indeed, those requests purport to be directed to ***dismissed defendant DynCorp International*** and provide a definition for "Subcontractor Defendants" that ***includes dismissed defendants TD Supply and Freedom Air***. The requests also reference the FA 8051-20-D-0002 contract (see Document Requests 1 and 12), ***even though the Court said that Relator's allegations regarding that contract were inadequate.*** In other words, following this Court's decision, Relator made no effort whatsoever to tailor his discovery to the remaining claims. In his Motion, Relator admits as much. Mot. at 2. ("Although this Court dismissed certain claims against other parties and certain alternative theories, nothing in that order affected the discovery Relator now seeks.").

Relator's new contention that this overbroad discovery should be allowed because Defendants' Motions to Dismiss did not challenge Relator's purported "pattern-or-practice" allegations, Mot. at 13-14, is nonsensical. The Motions to Dismiss sought dismissal of all claims

against all Defendants on the grounds that they were not adequately pled.  The Court granted the Motions as to three of the six defendants, one of two prime contracts, and two of three theories of liability.  Thus, there is no merit to Relator's contention that, in so ruling, the Court actually was endorsing an allegation of a company-wide pattern and practice impacting all "similar" prime contracts and all subcontractors to those contracts.  *Id*.  That reading of the Court's decision finds no support in the ruling itself, or in the cases Relator points to as support.

In fact, the principal case Relator relies on shows the opposite.  In *Wheeler*, the Fourth Circuit held that "[a] mere allegation that a corporate policy exists, with nothing more, is insufficient."  *U.S. ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 488 (4th Cir. 2025).  In that case, the relator had adequately pled facts to support allegations of conduct at certain defendant clinics in North Carolina, but the Fourth Circuit rejected relator's attempts to reach defendant's other locations nationwide, via a "corporate policy" allegation, and noted that "Rule 9(b) requires a False Claims Act whistleblower to describe the fraud with sufficient particularity." *Id*. (internal citation omitted).

Here, with respect to the contracts at issue, the Court made no finding that Relator adequately alleged claims beyond **one** of the two AFCAP V prime contracts referenced in the Complaint.  *See, e.g.*, ECF 90 at 2-7 (describing Relator's allegations).  In fact, the Court found that "[a]lthough it appears that some of the initial communication from Amentum to Suppliest may have come through individuals affiliated with DynCorp, the complaint otherwise does not allege any involvement by DynCorp or its representatives, and ***it appears that all of the subcontracts pertinent to this case that Amentum awarded were awarded under the URS AFCAP V Contract [the -0001 contract]***, rather than the AFCAP V contract that was awarded to DynCorp [the -0002 contract]."  *Id*. at 10 (emphasis added).

Likewise, while Relator claims an entitlement to discovery with respect to all of the Amentum Defendants' subcontractors because "Dallas Aviation Inc.'s involvement was merely one representative example of [a] broader scheme[,]" Mot. at 2, the Court's Motion to Dismiss decision revolves around a supposed "subcontracting stacking scheme" between the Amentum Defendants and Dallas Aviation, based on the one "youth raincoats" example alleged in the Complaint. *See e.g.*, ECF 90 at 4-5, 20.[2]  In fact, in finding that scienter was adequately alleged, the Court said that the Amentum Defendants "***knew that they used Dallas Aviation as a reseller*** when they could, and sometimes did, buy the items directly from another subcontractor, such as Suppliest." *Id*. at 22 (emphasis added).  Likewise, with respect to Relator's conspiracy claim, the Court found that Relator "has alleged an agreement, disclosed by the Dallas Aviation representative, ***between Dallas Aviation, Amentum, and URS for Dallas Aviation to act as a reseller of products*** . . . . Amentum and URS engaged in acts in furtherance of this agreement ***when they directed Dallas Aviation***[.]" *Id*. at 23 (emphasis added).

Thus, applying the *Wheeler* reasoning here, the Court determined that Relator had adequately alleged one "raincoats" example representative of a broader scheme of alleged "subcontract stacking" claims under the -0001 prime contract against the Amentum Defendants and Dallas Aviation—not some larger "pattern and practice" across all "similar" contracts and among all subcontractors.  Just as the Fourth Circuit found that "[n]othing in [the *Wheeler* relator's] complaint allows us to infer that the alleged 'corporate policy' in fact exists," *Wheeler*, 127 F.4th at 488, nothing in Relator's Complaint allows an inference of a corporate-wide policy or practice of anticompetitive subcontract stacking behavior.

---

[2] At the Motion to Dismiss stage, this Court had to accept Relator's Complaint as pled, but—as Defendants will show at the appropriate juncture (and as Relator already must know)—the example of alleged "subcontract stacking" portrayed in Relator's Complaint did not happen.

Relator's discovery should be limited to his remaining claims of "subcontract stacking" under the -0001 prime contract against the Amentum Defendants and Dallas Aviation. Indeed, it is widely understood that a dismissal of claims narrows the scope of relevant discovery. *See, e.g.*, *Rahman v. Allstate Ins. Co.*, No. 22-CV-2052, 2023 WL 6582993, at *5 (E.D. La. Oct. 10, 2023) ("Judge Barbier dismissed any claims relating to the Allstate products-only customers, but allowed Plaintiff to proceed with regard to customers with non-Allstate products. [] As such, only communications with customers having non-Allstate products are relevant."); *Socol v. Haas*, No. 18-CV-0090, 2021 WL 2635847, at *5 (W.D. Va. June 25, 2021); *Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.*, No. 07-CV-80112, 2008 WL 2474638, at *4 (S.D. Fla. June 19, 2008) ("Since the information in these documents concerns Walker's breach of oral contract/joint venture agreement claim, a claim decided unfavorably against Walker in the partial summary judgment, these documents are irrelevant and Lafarge accordingly is not compelled to produce them. Being bound by the partial summary judgment order, this Court declines to entertain Walker's argument that these documents are relevant in that they may reflect newly discovered evidence of the parties' intent to be bound[.]"); *Cobell v. Norton*, 226 F.R.D. 67, 77 (D.D.C. 2005) ("As the plaintiffs' only 'live' claim here is that the defendants have breached their duty to render an accounting of the Indian trust, the scope of discovery includes only those matters directly related to the defendants' accounting infrastructure[.]"); *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 540 (S.D.W. Va. 2005); *Jenkins v. Campbell*, 200 F.R.D. 498, 501 (M.D. Ga. 2001) ("Most of the information sought by Plaintiffs concern the issues decided adversely to him on summary judgment.").

Relator's overbroad discovery, particularly following the Court's Motion to Dismiss decision, is inappropriate.

### III.    Relator's Attempted Fishing Expedition Is Prohibited by the Fourth Circuit

Relator is on a fishing expedition.  Relator's March 6, 2026 interrogatory responses confirm this.  Under a heading called "General Objections and Statement," Relator states: "Further, any references to the First Amended Complaint, ECF No. 63 ('FAC'), and allegations therein are made without waiver of any rights Relator has in this case, ***including but not limited to his right to seek leave to amend the FAC based on newly-discovered evidence***."  Wollenberg Decl. ¶ 3 (emphasis added).  When asked to explain that statement, Relator's counsel said that the Court dismissed claims because Relator failed to plead them with particularity, and Relator was reserving his right to use evidence uncovered through discovery to revive previously dismissed claims, including the "bid rigging" claims. *Id*.

This exchange makes clear that Relator is pursuing broader discovery in the hopes of reviving dismissed claims and otherwise expanding his Complaint.  But the Fourth Circuit prohibits this tactic.  "The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) (internal quotations and citations omitted). Relator's discovery should be confined to the claims that passed pleading muster.  As explained in the Amentum Defendants' objections to Relator's discovery requests, those claims involve the Amentum Defendants, Defendant Dallas Aviation, Contract FA 8051-20-D-0001, and so-called "subcontract stacking."    And, as explained below, the Amentum Defendants are producing documents and information responsive to those remaining claims.

### IV.    Relator Mischaracterizes the Amentum Defendants' Discovery Responses, Which Are Not Limited to the One "Raincoats" Example Alleged in the Complaint

Relator misleadingly asserts that the Amentum Defendants' discovery responses are "limited to only one false claim involving just the Amentum Defendants and Dallas Aviation[.]"

8

ECF 113 at 1.  To be clear, the Amentum Defendants' position is that there is *no* false claim.  But, putting that aside for the moment, the Amentum Defendants have not limited discovery to the one supposed "subcontract stacking" example alleged in the Complaint.  For instance, in their interrogatory responses, the Amentum Defendants identify more than 30 purchase orders to Dallas Aviation, not just the one "raincoats" order found in the Complaint.  Unfortunately, Relator obfuscates this point by not including in his Motion the Amentum Defendants' complete interrogatory responses, which include the listing of the 30-plus purchase orders.  Mot. at 4.[3] Moreover, the Amentum Defendants already have produced to Relator all of those purchase orders, all of the requests for proposals associated with each purchase order, the bids received from Dallas Aviation and other approved vendors associated with each purchase order, and the justifications of award documentation associated with each purchase order.  Wollenberg Decl. ¶ 4.

Likewise, contrary to Relator's contention, the Amentum Defendants have not arbitrarily limited their discovery responses to a "single task order."  Mot. at 13.  The fact is that there were no purchase order awards to Dallas Aviation under the -0001 prime contract except under Task Order No. FA805121F0058, which explains the Amentum Defendants' response to Interrogatory No. 4.  Among other documents, the Amentum Defendants have produced the -0001 prime contract and this task order.  Wollenberg Decl. ¶ 4.

V.     **Even If They Were Relevant, Relator's Discovery Requests Are Not Proportional**

Even if Relator's discovery requests were limited to relevant discovery, that would not be dispositive.  "[T]he simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."  *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).  All permissible discovery must be measured against the "yardstick of proportionality."

---

[3] Local Rule 104.8(a) requires that "[t]he memorandum in support of the motion shall set forth, as to each response to which the motion is directed, . . . the response thereto."

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010).  Relevance alone is insufficient.  *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012).  Rule 26(b) requires courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  An analysis of these proportionality considerations also requires denial of Relator's Motion.

Relator makes three arguments in support of proportionality, none of which is accurate or persuasive.

First, Relator claims that "the Amentum Defendants possess exclusive access to the documents at issue[.]"  Mot. at 16.  Not true.  Relator is pursuing this claim on behalf of the United States, which has equal if not better access to any "invoices, and billing submissions under [the Amentum Defendants'] government contracts."  *Id*.  And those invoices and billing submissions to the Government will have "subcontracting records" information that Relator claims is in the "exclusive" possession of the Amentum Defendants, including each subcontractor used for the effort, the goods or services provided by the subcontractor, and the amount charged by the subcontractor for the goods or services.  Likewise, the claim that "Relator has no alternative means of obtaining this information" is simply wrong.  Relator commenced this action on behalf of the United States in 2023.  He could have and should have obtained this information from the United States by now.  But he obviously did not do so, and he still has not served a discovery request on the United States.  Wollenberg Decl. ¶ 5.

Second, Relator claims that without this broad discovery going beyond Dallas Aviation, "Relator cannot assess the full scope of the subcontract-stacking practice."  Mot. at 16.  Putting

10

aside that there is no subcontract-stacking practice, what Relator fails to acknowledge is that the information that he could obtain from the Amentum Defendants or the Government is only half of the story. The other half of the story is not within the Amentum Defendants' (or any Defendant's) possession, custody, or control. To determine if supposed "subcontractor stacking" is occurring beyond Dallas Aviation, Relator would have to obtain discovery from non-party subcontractors regarding their sources of goods and services and the prices charged by any lower tier subcontractors.[4] So, for Relator's broad requests to lead to any information relevant to so-called "subcontract stacking" beyond Dallas Aviation, Relator likely will have to subpoena a vast number of third parties.[5]

Third, Relator claims that "[t]he burden on the Amentum Defendants is modest relative to the stakes." *Id.* That conclusory assertion carries no weight. While Relator cavalierly claims that "[t]his is not a request for the Amentum Defendants' entire document universe," on their face, many of Relator's requests suggest otherwise. Relator also incorrectly claims that his requests are "targeted" and "tied to the specific contracts through which the FAC alleges false claims were submitted." *Id.* The only specific contracts mentioned in the Complaint are the -0001 and -0002 AFCAP V contracts, and Relator's requests certainly attempt to go well beyond those specific prime contracts.[6]

---

[4] Except in rare circumstances, the Amentum Defendants do not know the identity of lower tier subcontractors for commercial goods, much less the prices being charged by those lower tier subcontractors.

[5] This number is impossible to specify because it is unclear what contracts beyond the -0001 Relator is seeking to include in his discovery requests, and thus unclear how many subcontractors to the Amentum Defendants would be identified via Relator's broad discovery requests. However, this number could easily be in the hundreds, if not thousands.

[6] The Court should also "prevent [the] use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." *Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, No. 15-CV-0037, 2017 WL 876266, at *5 (E.D.N.C. Mar. 3, 2017) (quoting the 1983 Committee Note to Rule 26).

And, while Relator does not quantify the supposed "stakes," they are very low.  To put this into perspective, the value of all the purchase orders to Dallas Aviation under the -0001 prime contract is less than $3 million.  Thus—even assuming there is liability, which there is not—any damages here would be ***only a tiny fraction of that amount*** (*i.e.*, any artificial and concealed mark-up resulting from anticompetitive "subcontract stacking").

Relator's broad discovery requests cannot withstand a proportionality analysis.

## CONCLUSION

For the foregoing reasons, the Amentum Defendants respectfully request that the Court deny Relator's Motion.

Date: April 9, 2026

Respectfully submitted,

*/s/ Douglas W. Baruch*
Douglas W. Baruch (Bar No. 012554)
Jennifer M. Wollenberg (*pro hac vice*)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
douglas.baruch@morganlewis.com
jennifer.wollenberg@morganlewis.com

*Counsel for Amentum Services, Inc. and*
*URS Federal Services International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 9th day of April, 2026, Relator was served with a copy of this document by email to Relator's counsel of record pursuant to Relator's agreement to accept service via this method.

<u>*/s/ Douglas W. Baruch*</u>
Douglas W. Baruch