**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

<table>
<tr><td>

UNITED STATES OF AMERICA *ex rel.*
ADAM JOSEPHS,

                Plaintiff,

v.

AMENTUM SERVICES, INC., et al.

                Defendants.

</td><td>

CIVIL ACTION NO. 1:25-cv-01477-SAG

</td></tr>
</table>

**REPLY BRIEF IN FURTHER SUPPORT OF**
**RELATOR ADAM JOSEPH'S MOTION TO COMPEL**

Plaintiff-Relator Adam Josephs ("Plaintiff-Relator" or "Relator"), hereby submits this

Reply to Amentum's Opposition to Relator's Motion to Compel ("Opposition" or "Opp.")

pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 104.8, stating as

follows:

1

## **INTRODUCTION**

As set forth below, Relator's First Requests for Production ("First RFPs") and First Interrogatories to Defendants URS Federal Service International, Inc. ("URS") and Amentum Services Inc. ("Amentum") (collectively, the "Amentum Defendants") seek relevant and proportional discovery. The information at issue goes to the heart of Relator's theory of liability as laid out in the First Amended Complaint ("FAC"). The core dispute in this Motion is whether the Amentum Defendants may unilaterally confine their discovery responses to a single subcontractor, Dallas Aviation, when Relator's surviving claims allege a broader pattern and practice of subcontract stacking across the Amentum Defendants' contracts. The answer is no.

The Amentum Defendants' Opposition offers no persuasive reason to reach a different conclusion. Their primary argument—that this Court's decision on the Defendants' motions to dismiss limits the entire case only to subcontracts involving Dallas Aviation—misreads the plain language of the ruling. This Court permitted Relator's claims to proceed in part precisely because they described a "subcontract stacking scheme" and a "routine practice." *See Josephs v. Amentum Servs. Inc.,* 2025 WL 3223772, at *9–10 (D. Md. Nov. 19, 2025) (Gallagher, J.).

The Amentum Defendants had the opportunity to challenge the FAC's pattern or practice allegations at the motion to dismiss stage, but chose not to do so. They cannot now accomplish through discovery objections what they forfeited through their own legal arguments. Their remaining arguments, that Relator's requests are overbroad, that he is on a "fishing expedition," and that the discovery is disproportionate, rest on mischaracterizations of Relator's positions, selective quotation of inapposite authority, and the circular reasoning that because Amentum has limited its production to Dallas Aviation, and the Dallas Aviation purchase orders total less than $3 million, the case must be too small to justify discovery beyond Dallas Aviation.

## LEGAL ARGUMENT

**A.      The Court's Motion to Dismiss Decision Does Not Limit Discovery to Only Dallas Aviation**

The Amentum Defendants' claim that the Court's motion to dismiss decision limits all discovery to Dallas Aviation under a single contract fundamentally misreads the ruling. This Court did not find that Relator's claims are limited to one subcontractor or one transaction. Rather, the Court sustained Relator's allegations precisely because he adequately described "***a subcontract stacking scheme***," not an isolated incident. *Josephs v. Amentum Servs. Inc.,* 2025 WL 3223772, at \*9 (D. Md. Nov. 19, 2025) (Gallagher, J.) (emphasis added).

The Court found that allegations involving other subcontractors "provide additional evidence that subcontract stacking is ***a routine practice*** for Amentum." *Id.* at \*10 (emphasis added).

The use of the word "routine" signals this Court's understanding that the alleged conduct extends beyond a single subcontractor.

The subcontractors Freedom Air and TD Supply were dismissed because this Court concluded the FAC did not adequately allege subcontract stacking not because the broader pattern or practice allegations were rejected. DynCorp was dismissed because this Court concluded the FAC did not allege its involvement with sufficient particularity. Neither ruling narrows the scope of the Amentum Defendants' own conduct or limits discovery into whether the same scheme was replicated with other subcontractors under similarly situated contracts. Tellingly, Amentum never addresses this language in its opposition.

**B.      The Amentum Defendants Ignore Relator's March 17 Letter Narrowing Discovery Requests to Relevant Information**

The Amentum Defendants devote considerable space in their Opposition to objecting that Relator's requests reference DynCorp, the FA 8051-20-D-0002 prime contract, and dismissed

subcontractor defendants. Opp. at 4. But Relator already resolved these issues weeks before this Motion was filed.

In the March 17, 2026 letter, Relator expressly narrowed his request to exclude DynCorp and the FA 8051-20-D-0002 prime contract, and any documents related to claims under DynCorp-awarded contracts. Ex. A. Relator already clarified that he's not pursuing DynCorp material in his letter dated March 17, 2026. Ex. A. Relator's Motion also clarified that he was not seeking Dyncorp material. *See* Mot. at 14. What remains is discovery directed exclusively at subcontracts for commercial goods or services under contracts awarded to the Amentum Defendants—the precise universe of conduct encompassed by the surviving subcontract stacking theory. Yet the Amentum Defendants continue to argue otherwise. Their Opposition responds to a version of Relator's requests that doesn't exist to distract from the real issues in dispute.

More telling is what the Amentum Defendants' opposition does not address. The Opposition never engages with the specific language from this Court's decision that Relator identified in his Motion and in the March 17, 2026 letter. Nor does the Opposition address the fact that nowhere in their motion to dismiss did the Amentum Defendants challenge the FAC's pattern or practice allegations—the very allegations that provide the foundation for the scope of discovery Relator seeks. Instead of confronting these points, the Amentum Defendants construct and dismantle a manufactured straw man: that Relator is seeking discovery into "every prime contract" and "every subcontract." Opp. at 1. He is not. He said so in writing on March 17, 2026. The Amentum Defendants simply chose to ignore it.

### C.   The Amentum Defendants Misapply *Wheeler* and the Time to Raise a Wheeler Objection Has Passed

The Amentum Defendants' reliance on *Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472 (4th Cir. 2025) is not only misplaced on the merits—it is waived.

The Amentum Defendants' invocation of *Wheeler* is itself a concession that *Wheeler* does not foreclose this discovery. By arguing that *Wheeler* required Relator to plead more than "a mere allegation that a corporate policy exists," Opp. at 5, the Amentum Defendants implicitly acknowledge what Relator has argued throughout this dispute, including during meet and confers and in the March 17, 2026 letter to avoid motion practice: that the FAC's theory is that the instances of subcontract stacking alleged in the complaint are representative examples of a broader practice. That is precisely the framework *Wheeler* addresses. Under that framework, the proper vehicle for challenging the sufficiency of pattern or practice allegations is a motion to dismiss— not discovery objections served months after.

The Amentum Defendants had the opportunity to raise this challenge during their motions to dismiss and failed to do so. Nowhere in their motion to dismiss did the Amentum Defendants contest the FAC's core theory that the Dallas Aviation transaction was a representative example of a broader pattern or practice of subcontract stacking across the Amentum Defendants' contracts. *Wheeler* is not new case law, and the Amentum Defendants knew of *Wheeler* when they made their motions to dismiss.

Having elected not to challenge Relator's representative example allegations during the motion to dismiss, the Amentum Defendants cannot now accomplish through discovery objections what they failed to pursue through a motion to dismiss. The failure to raise this issue is not something they can now correct by refusing to engage in discovery.

Compounding Amentum's waiver here, the argument that could have and wasn't asserted in their motion to dismiss also was not raised in a motion for a protective order, even though they have been on notice of Relator's position since March 16, 2026, when the parties met and conferred prior to Relator's counsel sending the March 17 letter. *See, e.g.*, *Mezu v. Morgan State Univ.*, 269

F.R.D. 565, 575 (D. Md. 2010) (rejecting defendant's objections to discovery based on legal issues that were not raised in their motion to dismiss and where no motion for a protective order was filed).

Critically, the Amentum Defendants had the opportunity to challenge these broader pattern or practice allegations at the motion to dismiss stage, but chose not to do so. They have now had almost a month to file a motion for a protective order and have not. Having failed to challenge this angle on the scope of this case, they cannot now use discovery objections as a backdoor solution.

**D.      The Amentum Defendants Cannot Cite a Single Case Where Discovery Was Narrowed Based on Arguments Never Made**

While the Amentum Defendants cite a string of six decisions for the proposition that a dismissal of claims narrows the scope of relevant discovery, Opp. at 7[1], those cases are readily distinguishable. In *Rahman v. Allstate Ins. Co.*, No. 22-cv-2052, 2023 WL 6582993, at *5 (E.D. La. Oct. 10, 2023), the court partially granted a motion for a protective order because the district judge had actually addressed a relevant distinction regarding the scope of discovery in the motion to dismiss, from there it can be inferred that the defendant had actually raised that argument to allow the judge to reach it. Here, the Amentum Defendants never raised a *Wheeler* challenge, and so there was nothing for this Court to address. Additionally, *Rahman* did not involve pattern or practice allegations of the type at issue here.

In *Socol v. Haas*, No. 3:18-cv-00090, 2021 WL 2635847, at *5 (W.D. Va. June 25, 2021), the plaintiff sought discovery that fell outside the scope of anything he had alleged in his complaint, even considering claims that were dismissed. *Socol* bears no resemblance to this case,

---

[1] Local Rule 104.8(a) instructs that memoranda in support of motions to compel should be "succinct and need not include citation to legal authorities unless such citation is necessary in order to understand the issues presented." The Amentum Defendants' voluminous string citations are representative of their overall litigation conduct—to generate unnecessary work for Relator while shirking their own basic discovery obligations. In any case, all of the cases are distinguishable.

where Relator's requests (as clarified by the March 17 letter) track the FAC's surviving pattern or practice theory of subcontract stacking.

In *Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.*, No. 07-cv-80112, 2008 WL 2474638, at *4 (S.D. Fla. June 19, 2008), the court granted partial summary judgment based on arguments plaintiff asserted to defeat counterclaims. *Id*. at *1 (explaining how the court "granted [] summary judgment on Walker's breach of oral contract-joint venture claim after finding that the alleged oral agreement failed for lack of showing an intent for the parties to be bound"). Here, the Amentum Defendants did not make the relevant arguments.

In *Cobell v. Norton*, 226 F.R.D. 67, 77 (D.D.C. 2005) the court had already issued an order limiting the claims, upon argument of the defendant, and it reiterated that scope in its decision. *Id*. at 77–80. This is not the same as this case where Amentum failed to make the argument and this Court's decision embraced that the Dallas Aviation instance of subcontract stacking in the FAC was a representative example. Similarly in *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 538 (S.D.W. Va. 2005), a relevant prior court order on motions for summary judgment "narrow[ed] the issues to be resolved and thereby provide[d] guidance for resolution of this outstanding discovery." *Id*. at 538. This is distinguishable from the facts here.

In *Jenkins v. Campbell*, 200 F.R.D. 498, 499–500 (M.D. Ga. 2001), the court limited discovery after granting partial summary judgment on arguments the defendants had actually raised and the court had actually decided. The Amentum Defendants can point to no equivalent ruling here.

     **E.**     **Reserving Rights to Amend Based on Newly Discovered Evidence is Not a Fishing Expedition.**

The Amentum Defendants seize on a routine reservation of rights in Relator's interrogatory responses to construct a narrative that Relator is pursuing discovery to engage in a fishing expedition. This is yet another mischaracterization of Relator's positions and his counsel's words.

Relator's Interrogatory Responses and Objections include a reservation of Relator's rights with respect to seeking leave to amend because the interrogatories ask a series of questions specifically about his FAC. For example, the Amentum Defendants' Interrogatory # 1 asks him to "identify those instances [of subcontract stacking] personally observed by Relator, including any 'suspicious behavior' observed by Relator as alleged in ¶ 120 of the Amended Complaint." Ex. G at 5. Relator's responses include a general statement clarifying that "references to the First Amended Complaint … and allegations therein are made without waiver of any rights Relator has in this case, including but not limited to his right to seek leave to amend the FAC based on newly discovered evidence." Ex. H at 1–2. In other words, the Amentum Defendants asked about the FAC, and Relator clarified that he was reserving his rights in case he sought leave to amend his complaint again. Nothing about this is controversial.

Even if newly-discovered evidence did warrant seeking leave to amend with respect to previously-dismissed theories from the FAC, nothing about that would be improper. The Amentum Defendants' reference to *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), on this point is inapposite. Indeed, immediately after the language the Amentum Defendants quote, the Fourth Circuit said that courts should "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* at 784 (emphasis added). Even though this

Court did dismiss Relator's other theories on particular grounds, the FAC was not a theory without any pre-discovery evidence. It was a theory with substantial prediscovery evidence.

For example, this Court acknowledged that "Plaintiff made detailed allegations that Amentum shared subcontractor prices with other subcontractors and encouraged subcontractors to submit sham bids." *Amentum Servs.*, 2025 WL 3223772, at *9; *see also id.* at *7 (describing Relator's pre-discovery evidence). This Court granted the motions to dismiss in particular because "it is not clear that those practices led Amentum to ultimately select bids on an uncompetitive basis" because "Amentum still selected the lowest, and independent, bid." *Id.* at *7.    Ultimately, the Court determined that it "need not decide whether the alleged bid rigging and price sharing" violations occurred, because "Plaintiff has failed to show that such a violation based on the alleged price sharing and bid rigging was material." *Josephs v. Amentum Servs. Inc.,* 2025 WL 3223772, at *7 (D. Md. Nov. 19, 2025) (Gallagher, J.).

Thus, the Amentum Defendants' "fishing expedition" accusation cannot be squared with the record. Relator's March 17, 2026, letter expressly narrowed the scope of his requests: they exclude DnyCorp, the FA 8051-20-D-0002 prime contract, and any documents related to claims under DynCorp awarded contracts. *See* Ex. A. Relator clarified his requests to ensure they were appropriately narrowed. Reserving his rights to entertain the possibility that discovery might resolve the issues this Court identified does not change that.

### F.    The Discovery Requests Are Proportional

The United States is not a substitute for Amentum's discovery obligations. The Amentum Defendants suggest that Relator should obtain the documents he seeks from the United States. Opp. at 10. Amentum and URS are defendants in this case. The United States — other than being the party-in-interest with respect to the damages suffered—is not a party to this case because it has declined to intervene. The United States has no discovery obligations here and Relator cannot

9

compel its cooperation in any manner distinct from usual and customary third-party discovery procedures. While Relator would therefore (and intends to attempt to) obtain what relevant evidence he can through a *Touhy* request, those efforts to obtain third-party discovery do not absolve Amentum of producing what it has in its possession, custody, or control.

Amentum Defendants also claim that the "stakes" of this case are "very low" because the value of all Dallas Aviation purchase orders under the FA 8051-20-D-0001 prime contract total less than $3 million. Opp. at 12. But this argument assumes its own conclusion. Relator does not know the full universe of the Amentum Defendants' subcontract values under the FA 8051-20-D-0001 prime contract or other similarly-situated contracts because the Amentum Defendants refuse to produce that information. It is therefore no surprise that Relator cannot yet quantify the full scope of potential liability. The Amentum Defendants cannot withhold the very evidence needed to assess the magnitude of the case and then argue that the case is too small to justify the discovery that would reveal it.

The Amentum Defendants argue that proving subcontract stacking beyond Dallas Aviation would require third-party subpoenas. Opp. at 11. That may ultimately be true, but it is not a reason to deny discovery from the Amentum Defendants themselves—especially when the Amentum Defendants own records are the logical starting point in that inquiry.

Beyond the legal deficiencies of their proportionality argument, the Amentum Defendants' complaints about the burden relative to the stakes are even more incredulous in light of their prior refusal to engage in any early mediation or settlement conference proceedings. Relator was willing to sequence discovery in this manner to explore a potential early and efficient resolution of this case before the need to expand discovery to other topics, but Amentum rejected that proposal in its entirety. Relator then moved forward with discovery on all relevant topics, which is hardly

controversial or unexpected. The Amentum Defendants have been engaging in trench warfare litigation over what they claim is a small or meritless case. Those two things do not hold together.

## CONCLUSION

For all of the foregoing reasons, Plaintiff-Relator respectfully requests that the Court grant his Motion to Compel Discovery responses as requested to First RFPs 1–12 and First Interrogatories 1–14 and compel complete responses on a reasonable schedule.

Date: April 13, 2026            Respectfully submitted,

**LAW OFFICE OF MAX RODRIGUEZ PLLC**

By:_____*/s/ Max E. Rodriguez*_____
Max E. Rodriguez (admitted pro hac vice)
Bianca Beam (Bar ID 31709)
(signed by Max Rodriguez with permission of Bianca Beam)

575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law
bianca@maxrodriguez.law

**JANOVE PLLC**

By:_____*/s/ Raphael Janove*_____
Raphael Janove (Bar ID 31824)
(signed by Max Rodriguez with permission of Raphael Janove)

115 Broadway, 5th Floor
New York, NY 10006
Tel: (646) 347-3940
raphael@janove.law

**Attorneys for Plaintiff-Relator**

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ADAM JOSEPHS, <br><br> Plaintiff, <br><br> v. <br><br> AMENTUM SERVICES, INC., et al. <br><br> Defendants. | CIVIL ACTION NO. 1:25-cv-01477-SAG |

**DECLARATION OF MAX E. RODRIGUEZ IN SUPPORT OF RELATOR'S REPLY
BRIEF IN FURTHER SUPPORT OF RELATOR'S MOTION TO COMPEL**

I, Max E. Rodriguez, hereby state and declare as follows:

1.      I am over eighteen years of age and competent to testify to the matters set forth in this Declaration.

2.      I am one of the attorneys representing the Plaintiff-Relator in the above-titled matter and make this Declaration in support of Plaintiff-Relator's Reply Brief in Further Support of Relator's Motion to Compel addressed to Defendants Amentum Services, Inc., and URS Federal Services International Inc.

3.      A true and correct copy of URS Federal Services International, Inc.'s First Set of Interrogatories to Relator Adam Josephs is attached hereto as **Exhibit G**.

4.      A true and correct copy of the Plaintiff-Relator's Responses and Objections to Defendant URS Federal Services International, Inc.'s First Set of Interrogatories is attached hereto as **Exhibit H**.

1

2

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: April 13, 2026            By:    /s/ Max Rodriguez    
                                    Max Rodriguez

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Adam JOSEPHS,

     Plaintiff,

v.

AMENTUM SERVICES, INC., et al.,

     Defendants.

CASE NO. 1:25-cv-01477-SAG

**URS FEDERAL SERVICES INTERNATIONAL, INC.'S FIRST SET OF
INTERROGATORIES TO RELATOR ADAM JOSEPHS**

Pursuant to Fed. R. Civ. P. 33, L.R. 104, and Appendix A to the Local Rules (Discovery Guidelines), Defendant URS Federal Services International, Inc., by its undersigned attorneys, propounds these Interrogatories, to which Relator Adam Josephs shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Instructions and Definitions set forth hereinafter.

INSTRUCTIONS

1.     These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and, unless privileged, attorneys. It is intended that the following discovery requests will not solicit any information protected either by the attorney/client privilege or work product doctrine which was created or developed by, counsel for the responding party after the date on which this litigation was commenced except to the extent that the material was shared with a third party, including the United States. If any inquiry is susceptible of a construction which calls for the production of such information, that material need not be provided and no privilege log

1

pursuant to Fed. R. Civ. P. 26(b)(5) or Discovery Guideline 10(d) will be required as to such information.

2.     These Interrogatories are continuing in character, so as to require that supplemental answers be filed seasonally if further or different information is obtained with respect to any interrogatory.

3.     Pursuant to Discovery Guideline 10(b), no part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. Pursuant to Discovery Guideline 10(a), if a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

4.     Pursuant to Discovery Guideline 10(d), in accordance with Fed. R. Civ. P. 26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof, and information is not provided on the basis of such assertion:

A. In asserting the privilege, the responding party shall, in the objection to the interrogatory, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed.

B. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

    1) For oral communications:

        a) the name of the person making the communication and the names of persons present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication;

2

b) the date and place of the communication; and

c) the general subject matter of the communication

2) For documents:

a) the type of document,

b) the general subject matter of the document,

c) the date of the document, and

d) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5. If the responding party elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained or, if produced electronically, produced in a manner consistent with Guideline 2.04 of the ESI Principles.

6. If, in answering these Interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

7. These Interrogatories only seek information relevant to the claims that remain in this action following the Court's Order (ECF 91) and Decision (ECF 90) dated November 19, 2025.

3

<u>DEFINITIONS</u>

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

2.    The term "communication" means the transmittal of information by any means.

3.    The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to, electronically stored information. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

4.    When referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

5.    When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

4

6.      The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7.      The terms "you" or "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

8.      The term "Suppliest" refers to Suppliest Co. LLC.

9.      The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neuter form shall include each of the other genders.

INTERROGATORIES

1.      Describe all instances of "subcontract stacking" by Defendants and identify those instances personally observed by Relator, including any "suspicious behavior" observed by Relator as alleged in ¶ 120 of the Amended Complaint.

2.      Identify each false statement or false claim by each Defendant or caused to be made by each Defendant as a result of the alleged "subcontract stacking."

3.      Itemize and show how you calculate any damages and penalties.

4.      Identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the knowledge possessed by each such person. Include in your response all persons associated with each Defendant who had knowledge that any claims for payment to the United States were "tainted" by the alleged "subcontract stacking" conduct.

5.      Identify the source of and any support for your statement in ¶ 46 of the Amended Complaint that "[s]ubcontract stacking schemes can also be reflected through a practice where a

5

broker or intermediary layers multiple contracts—often between the government, the broker, and one or more resellers or vendors—in a way that artificially increases costs and conceals the markup of the goods or services."

6.      Identify all persons or entities to whom you have assigned any financial interest in this litigation and, for each such person or entity, describe the arrangement and identify any documents reflecting the arrangement.

7.      Identify any written disclosures or other voluntary provision of information made by you or on your behalf to the Government with respect to this action such as described in 31 U.S.C. § 3730(b)(2) and/or 31 U.S.C. § 3730(e)(4)(B), including the disclosure date, the person or entity making the disclosure, and any documents or other evidence appended to or referenced in the disclosure.

8.      Describe any communications between you (and/or any of Suppliest's present or former directors, officers, or employees) and any other person, including any fact witness, Defendant, or third party (including any representative of the United States or The Anti-Fraud Coalition), concerning this action or its subject matter.

9.      State the facts concerning your allegation that Defendants engaged in a conspiracy to submit false claims to the Government through "subcontract stacking" (*see, e.g.,* Amended Complaint, Count III), including the date when the conspiracy was formed, each participant in the conspiracy, when each participant joined the conspiracy, what each participant gained from participation in the conspiracy, the conspiratorial agreement, and all actions taken in furtherance of the alleged conspiracy.

10.     State the facts concerning your allegation that "Amentum and Dallas Aviation made an express agreement to fix the prices that Dallas Aviation would pay for raincoats before reselling

6

to Amentum," as alleged on p. 18 of Relator's Opposition to Motion to Dismiss (ECF 77).  In your

response, specify the price Suppliest charged to Dallas Aviation for the raincoats and the manner

in which Suppliest determined that price.


 Dated: February 4, 2026

*/s/ Douglas W. Baruch*
Douglas W. Baruch (Bar No. 012554)
Jennifer M. Wollenberg (*pro hac vice*)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
douglas.baruch@morganlewis.com
jennifer.wollenberg@morganlewis.com

*Counsel for URS Federal Services International, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 4, 2026, the foregoing was served, per Relator's

consent to such service, via email to counsel of record for Relator Adam Josephs.

>  */s/ Douglas W. Baruch*
> Douglas W. Baruch

EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ADAM JOSEPHS, <br><br> Plaintiff, <br><br> v. <br><br> AMENTUM SERVICES, INC. *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 1:25-cv-01477-SAG |

**PLAINTIFF-RELATOR'S RESPONSES AND OBJECTIONS TO DEFENDANT URS FEDERAL SERVICES INTERNATIONAL, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules for the District of Maryland, Plaintiff-Relator Adam Josephs ("Relator") hereby responds and objects to Defendant URS Federal Services International, Inc.'s ("Defendant") First Set of Interrogatories ("Interrogatories"), dated February 4, 2026.

**GENERAL OBJECTIONS AND STATEMENT**

These Objections are based on the information available to Relator as of the date stated and are correct to the best of Relator's current knowledge, information and belief, and after reasonable search and inquiry. There may be other information not now recognized by Relator as information responsive to the Interrogatories and not subject to an objection. Further, any references to the First Amended Complaint, ECF No. 63 ("FAC"), and allegations therein are made

without waiver of any rights Relator has in this case, including but not limited to his right to seek leave to amend the FAC based on newly-discovered evidence.

## <u>OBJECTIONS TO SPECIFIC INTERROGATORIES</u>

### INTERROGATORY NO. 1

Describe all instances of "subcontract stacking" by Defendants and identify those instances personally observed by Relator, including any "suspicious behavior" observed by Relator as alleged in ¶ 120 of the Amended Complaint.

### RESPONSE TO INTERROGATORY NO. 1

Plaintiff incorporates by reference the General Objections as if fully stated herein. Plaintiff objects to this Interrogatory on the grounds that it is premature and that evidence of subcontract stacking and suspicious behavior has not yet been produced by Defendants or third parties in this case. Plaintiff further objects to this interrogatory as unduly burdensome when such facts will be produced in the normal course of discovery, and Plaintiff objects that this Interrogatory also seeks privileged communications and attorney work-product. *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 418 (D. Md. 2005) (denying motion to compel response to interrogatories that asked for identification and description of all documents "that you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages"). Plaintiff further objects to this Request to the extent it calls for the identification of documents or information within Defendant's possession, custody, or control. In particular, Plaintiff notes that much of the relevant information that this Interrogatory seeks would be uniquely within Defendants' control, such as the overcharges to the United States government because of Defendants' and its co-conspirators' misconduct, etc.

2

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiff refers Defendants to the allegations in the FAC. Plaintiff further refers Defendants to the following instances of "subcontract stacking" and "suspicious behavior": FAC ¶¶ 6–7, 120–134, 137–140, 143–162, 164, 166–169 (describing price sharing, subcontract stacking, and suspicious practices).

**INTERROGATORY NO. 2**

Identify each false statement or false claim by each Defendant or caused to be made by each Defendant as a result of the alleged "subcontract stacking."

**RESPONSE TO INTERROGATORY NO. 2**

Plaintiff incorporates by reference the General Objections as if fully stated herein. Plaintiff objects to this Interrogatory on the grounds that it is premature and that evidence of Defendants' false claims has not yet been produced by Defendants or third parties in this case. Plaintiff further objects to the Interrogatory's use of the phrases "each false statement or false claim" as vague and overbroad. Plaintiff further objects to this interrogatory as unduly burdensome when such facts will be produced in the normal course of discovery, and Plaintiff objects that this interrogatory also seeks privileged communications and attorney work-product. *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 418 (D. Md. 2005) (denying motion to compel response to interrogatories that asked for identification and description of all documents "that you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages"). Plaintiff further objects to this Request to the extent it calls for the identification of documents or information within Defendant's possession, custody, or control. In particular, Plaintiff notes that much of the relevant information

3

that this Interrogatory seeks would be uniquely within Defendants' control, such as the overcharges to the United States government because of Defendants' and its co-conspirators' misconduct, etc.

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiff refers Defendants to the allegations in the FAC. Plaintiff further refers Defendants to the following instances of false statements and claims alleged in the FAC:

- ¶¶ 5, 8, 105–111, 174–183 (describing false certifications related to Amentum's subcontractor agreement).
- ¶¶ 8, 31–47, 68–78, 80, 82, 87–93, 103, 113–115, 118, 137, 184–217 (describing violated FARS provisions and unlawful practices).
- ¶¶ 60–67 (describing types of false claims).
- ¶¶ 74–86, 119, 136, 141–142, 163 (describing claims and contracts under which false claims were submitted).
- ¶¶ 170–171 (describing false statements related to Amentum's code of conduct).

## INTERROGATORY NO. 3

Itemize and show how you calculate any damages and penalties.

## RESPONSE TO INTERROGATORY NO. 3

Plaintiff objects to this Interrogatory because it is premature. Plaintiff anticipates that damages will be the subject of discovery, which in turn will rely on documents not yet produced by Defendants. Plaintiff further objects to this Interrogatory because it is burdensome insofar as it would require reviewing records which have yet to be produced by Defendants. Plaintiff furthers object to the extent this Interrogatory seeks premature disclosure of experts and/or expert information, or requires Plaintiff to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony. Plaintiff further objects to this Request to the extent it calls for the identification of documents or information within Defendant's possession, custody,

4

or control. In particular, Plaintiff notes that much of the relevant information that this Interrogatory seeks would be uniquely within Defendants' control, such as the overcharges to the United States government because of Defendants' and its co-conspirators' misconduct, etc. Plaintiff further objects to this interrogatory as unduly burdensome when such facts will be produced in the normal course of discovery, and Plaintiff objects that this interrogatory also seeks privileged communications and attorney work-product. *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 418 (D. Md. 2005) (denying motion to compel response to interrogatories that asked for identification and description of all documents "that you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages").

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiffs' damages calculations rely on information still subject to pending discovery and within Defendants' possession or control. Plaintiffs will provide Defendants with an expert report at the appropriate time.

## INTERROGATORY NO. 4

Identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the knowledge possessed by each such person. Include in your response all persons associated with each Defendant who had knowledge that any claims for payment to the United States were "tainted" by the alleged "subcontract stacking" conduct.

## RESPONSE TO INTERROGATORY NO. 4

Plaintiff objects to this request as burdensome and overbroad as requesting "all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject

matter of the knowledge possessed by each such person," without limitation as to the identification of individuals that would have potentially discoverable information regarding such allegations or are may be called as a witness in this case. *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 414 (D. Md. 2005) (denying motion to compel response to substantially similar interrogatories "seeking the identification of persons with knowledge" as "too broad and appear to seek work-product"). Plaintiff further objects to this request as premature, because the identities of potential witnesses or other individuals in this case are largely within Defendants' custody, possession, or control, and Defendants have not yet produced relevant discovery. Plaintiff further objects to this interrogatory as seeking attorney-work product, including, without limitation, the interrogatory as to "tainted" or "subcontract stacking."  Plaintiff further objects to the terms "personal knowledge" and "subject matter of the knowledge" as vague and overbroad.

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

| Person | Company | Subject Matter |
|---|---|---|
| Adam Josephs | Suppliest | Suppliest operations and interactions with Defendants as described in the FAC |
| Billy Harlin | Amentum | Amentum government contracting, procurement, and subcontracting |
| Genifer Clark | Amentum | Amentum government contracting, procurement. and subcontracting |
| Jacquelyn Briggs | Amentum | Amentum government contracting, procurement, and subcontracting |

6

| Person | Company | Subject Matter |
|---|---|---|
| Joseph Clark | Amentum | Amentum government contracting, procurement, and subcontracting |
| Rob Tillery | Amentum | Amentum procurement and subcontracting |
| Evonne Stevens | Amentum | Amentum government contracting, procurement, and subcontracting |
| Amanda Leonard | Amentum | Amentum government contracting, procurement, and subcontracting |
| Mike Williams | Dallas Aviation | Dallas Aviation procurement and pursuit and performance of subcontracts with Amentum |
| Melissa Lopez-Rodriguez | Dallas Aviation | Dallas Aviation procurement and pursuit and performance of subcontracts for Amentum |
| Magali Salinas | Dallas Aviation | Dallas Aviation procurement and pursuit and performance of subcontracts with Amentum |
| Sophia Canoy | Dallas Aviation | Dallas Aviation procurement and pursuit and performance of subcontracts with Amentum |
| Heather Venable | TD Supply | TD Supply procurement and pursuit and performance of subcontracts with Amentum |
| Bernie Iglesias | Freedom Air | Freedom Air procurement and pursuit and performance of subcontracts with Amentum |

| Person | Company | Subject Matter |
|---|---|---|
| Alex Torrente | Freedom Air | Freedom Air procurement and pursuit and performance of subcontracts with Amentum |

**INTERROGATORY NO. 5**

Identify the source of and any support for your statement in ¶ 46 of the Amended Complaint that "[s]ubcontract stacking schemes can also be reflected through a practice where a broker or intermediary layers multiple contracts—often between the government, the broker, and one or more resellers or vendors—in a way that artificially increases costs and conceals the markup of the goods or services."

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to this Interrogatory as seeking attorney work-product and privileged information. Plaintiff further objects to this Interrogatory as seeking duplicative information or information that is publicly available. Plaintiff further objects to this interrogatory as unduly burdensome when such facts will be produced in the normal course of discovery, and Plaintiff objects that this interrogatory also seeks privileged communications and attorney work-product. *See United Oil Co. v. Parts Assocs.*, Inc., 227 F.R.D. 404, 418 (D. Md. 2005) (denying motion to compel response to interrogatories that asked for identification and description of all documents "that you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages").

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

The statement in the FAC is based on Plaintiffs' observation of Defendants' practices and government guidance and enforcement actions, as described in the FAC. Such schemes are also

8

described in public government reports equally available to Defendants. *See, e.g.*, United States Gov't Accountability Office, *Contract Risk a Key Factor in Assessing Excessive Pass-Through Charges*, No. GAO-08-269 (Jan. 25, 2008), *available at* https://www.gao.gov/assets/gao-08-269.pdf.

### INTERROGATORY NO. 6

Identify all persons or entities to whom you have assigned any financial interest in this litigation and, for each such person or entity, describe the arrangement and identify any documents reflecting the arrangement.

### RESPONSE TO INTERROGATORY NO. 6

Plaintiff objects to this Interrogatory as seeking attorney work-product and privileged information. Plaintiff further objects to this Interrogatory as seeking irrelevant information.

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiff responds that there is no such person or entity.

### INTERROGATORY NO. 7

Identify any written disclosures or other voluntary provision of information made by you or on your behalf to the Government with respect to this action such as described in 31 U.S.C. § 3730(b)(2) and/or 31 U.S.C. § 3730(e)(4)(B), including the disclosure date, the person or entity making the disclosure, and any documents or other evidence appended to or referenced in the disclosure.

### RESPONSE TO INTERROGATORY NO. 7

Plaintiff objects to this Interrogatory on the grounds that it is overbroad as to time and scope, unduly burdensome, and oppressive, and requests identification of documents outside the

9

possession, custody, and control of Plaintiff. Plaintiff also objects to the request as seeking discovery that is protected by the attorney-client privilege, the work-product doctrine, or their extension through Plaintiff's common-interest privilege with the United States. *See, e.g., United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, No. 4:12-CV-543, 2015 WL 4609742, at *2–3 (E.D. Tex. July 31, 2015). The United States has authorized Plaintiff to communicate, as a part of his responses and objections herein, that the United States also objects to the request on this basis. Subject to and without waiving the aforementioned objections, Plaintiff responds as follows:

Plaintiff responds with the following table identifying documents sent to the United States government. Additional information about such documents are subject to the common-interest privilege with the United States.

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Disclosure Statement | April 21, 2023 | Work-Product, Common Interest |
| Exhibit 1 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 2 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 3 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 4 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 5 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 6 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 7 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 8 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 9 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 10 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 11 | April 21, 2023 | Underlying document, will be produced |

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Exhibit 12 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 13 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 14 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 15 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 16 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 17 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 18 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 19 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 20 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 21 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 22 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 23 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 24 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 25 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 26 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 27 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 28 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 29 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 30 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 31 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 32 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 33 | April 21, 2023 | Underlying document, will be produced |

11

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Exhibit 34 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 35 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 36 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 37 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 38 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 39 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 40 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 41 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 42 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 43 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 44 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 45 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 46 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 47 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 48 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 49 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 50 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 51 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 52 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 53 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 54 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 55 | April 21, 2023 | Underlying document, will be produced |

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Exhibit 56 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 57 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 58 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 59 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 60 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 61 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 62 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 63 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 64 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 65 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 66 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 67 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 68 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 69 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 70 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 71 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 72 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 73 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 74 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 75 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 76 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 77 | April 21, 2023 | Underlying document, will be produced |

13

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Exhibit 78 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 79 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 80 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 81 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 82 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 83 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 84 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 85 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 86 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 87 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 88 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 89 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 90 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 91 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 92 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 93 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 94 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 95 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 96 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 97 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 98 | April 21, 2023 | Underlying document, will be produced |
| Exhibit 99 | April 21, 2023 | Underlying document, will be produced |

14

| Document Description | Document Transmission Date | Basis for Privilege |
|---|---|---|
| Exhibit 100 | April 21, 2023 | Underlying document, will be produced |
| Supplemental Disclosure Statement | August 1, 2023 | Work-Product, Common Interest |
| Memorandum from Relator's Counsel to the U.S. Department of Justice, Antitrust Division | August 1, 2023 | Work-Product, Common Interest |
| AJS0000001-00002374 | August 1, 2023 | Underlying document, will be produced |
| AJS0002377-0002514 | August 1, 2023 | Underlying document, will be produced |
| AJS0002515-0002541 | August 1, 2023 | Underlying document, will be produced |
| AJS0002543-0002637 | August 1, 2023 | Underlying document, will be produced |

**INTERROGATORY NO. 8**

Describe any communications between you (and/or any of Suppliest's present or former directors, officers, or employees) and any other person, including any fact witness, Defendant, or third party (including any representative of the United States or The Anti-Fraud Coalition), concerning this action or its subject matter.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff incorporates by reference the General Objections as if fully stated herein. Plaintiff objects to this Request on the grounds that it is overbroad as to time and scope, unduly burdensome, and oppressive, and requests documents outside the possession, custody, and control of Plaintiff, as it seeks all documents reflecting communications between Plaintiff or any of Suppliest's present or former directors, officers, or employees, and any Defendant, without any limitation as to concerning the action or its subject matter documents concerning this subject matter, thereby imposing an excessive burden on Plaintiff to search and produce such documents. Plaintiff objects to this Request on the ground that the information sought is in the possession of, known to, or

15

otherwise equally available to Defendant. Plaintiff also objects to the request because it seeks discovery that is protected by the attorney-client privilege, the work-product doctrine, or their extension through Plaintiff's common-interest privilege with the United States. *See, e.g., United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, No. 4:12-CV-543, 2015 WL 4609742, at *2–3 (E.D. Tex. July 31, 2015). The United States has authorized Plaintiff to communicate, as a part of his responses and objections herein, that the United States also objects to the request on this basis. Plaintiff further objects to the request for communications with the Anti-Fraud Coalition as being irrelevant to the merits of this case. The Anti-Fraud Coalition submitted an amicus brief on a discrete issue of constitutional law, and otherwise has no connection to the subject matter of this action. Plaintiff further objects to this request to the extent it seeks Plaintiff's counsel's communications with third parties.

Subject to and not waiving the foregoing objections, Plaintiff states as follows:

Plaintiff requests the Parties meet and confer with respect to this Interrogatory so that Defendant can provide additional specificity regarding what Defendants mean by "describe" and which communications it wants a description of, and why that information is not contained by simply reading the documents that Plaintiffs and Defendants will produce, without which Plaintiff will be incapable of preparing a proportionally reasonable response to this interrogatory. Plaintiff will not write a lengthy response describing the documents produced in this action.

**INTERROGATORY NO. 9**

State the facts concerning your allegation that Defendants engaged in a conspiracy to submit false claims to the Government through "subcontract stacking" (see, e.g., Amended Complaint, Count III), including the date when the conspiracy was formed, each participant in the conspiracy, when each participant joined the conspiracy, what each participant gained from

participation in the conspiracy, the conspiratorial agreement, and all actions taken in furtherance of the alleged conspiracy.

## RESPONSE TO INTERROGATORY NO. 9

Plaintiff objects to this request as burdensome and overbroad as essentially requesting all facts supporting Plaintiff's case to be recited in response to an interrogatory. Plaintiff further objects to this request as premature, because facts relevant to this lawsuit are largely within Defendants' custody, possession, or control, and Defendants have not yet produced relevant discovery. Plaintiff further objects to the terms "personal knowledge" and "subject matter of the knowledge" as vague and overbroad. Plaintiff further objects to this interrogatory as unduly burdensome when such facts will be produced in the normal course of discovery, and Plaintiff objects that this interrogatory also seeks privileged communications and attorney work-product. *See United Oil Co. v. Parts Assocs.*, Inc., 227 F.R.D. 404, 418 (D. Md. 2005) (denying motion to compel response to interrogatories that asked for identification and description of all documents "that you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages").

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiff refers Defendant to the FAC in this matter and forthcoming document productions in this case. Plaintiff further refers Defendants to the following instances of allegations showing a conspiracy:

- ¶¶ 123–128 (describing sharing of bid information by Amentum that formed the basis of a request for Suppliest to fulfill orders for subcontractors of Amentum indirectly);
- ¶¶ 130, 143–152 (describing Amentum's knowledge and approval of non-competitive bids by subcontractors);

17

- ¶¶ 131–134, 153 (describing sharing of bid information by Amentum that formed the basis of a request for Suppliest to fulfill orders for subcontractors of Amentum indirectly); and
- ¶¶ 218–221 (describing and restating indicia of conspiracy).

## INTERROGATORY NO. 10

State the facts concerning your allegation that "Amentum and Dallas Aviation made an express agreement to fix the prices that Dallas Aviation would pay for raincoats before reselling to Amentum," as alleged on p. 18 of Relator's Opposition to Motion to Dismiss (ECF 77). In your response, specify the price Suppliest charged to Dallas Aviation for the raincoats and the manner in which Suppliest determined that price.

## RESPONSE TO INTERROGATORY NO. 10

Plaintiff objects to this request as burdensome and overbroad as essentially requesting all facts supporting Plaintiff's case to be recited in response to an interrogatory. Plaintiff further objects to this request as premature, because facts relevant to this lawsuit are largely within Defendants' custody, possession, or control, and Defendants have not yet produced relevant discovery. Plaintiff further objects to the terms "personal knowledge" and "subject matter of the knowledge" as vague and overbroad.

Subject to, notwithstanding, and not waiving the above objections, Plaintiff responds as follows:

Plaintiff refers Defendant to the FAC in this matter, including FAC ¶¶ 150–51, and forthcoming document productions in this case. Plaintiff further states that Suppliest charged Dallas Aviation $34.99 per raincoat; when Dallas Aviation contacted Suppliest seeking a price quote for raincoats, Dallas Aviation informed Plaintiff that it had already received from Amentum the price quote that Suppliest had provided to Amentum of $34.99.

Dated: March 6, 2026

Respectfully submitted,

**JANOVE PLLC**

By: /s/ *Raphael Janove*
Raphael Janove (Bar ID 31824)
500 7th Ave., 8th Fl.
New York, NY 10018
646-347-3940
raphael@janove.law

**LAW OFFICE OF MAX RODRIGUEZ PLLC**

By: /s/ *Max Rodriguez*
Max E. Rodriguez (admitted pro hac vice)
Bianca Beam (Bar ID 31709)
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law
bianca@maxrodriguez.law

*Attorneys for Plaintiff-Relator Josephs*

19

**VERIFICATION**

I, Adam Josephs, am Plaintiff-Relator in this action. I make this verification pursuant to Fed. R. Civ. P. 33(b)(5). I have reviewed the foregoing Plaintiff-Relator's Responses to Defendant URS Federal Services International, Inc.'s First Set of Interrogatories (the "Responses"), which were prepared with the assistance of counsel.

Based on my review and a reasonable inquiry, I believe that the foregoing Responses are true and correct to the best of my knowledge, information, and belief as to interrogatories concerning my experience and with regard to other interrogatories seeking other facts, they are being supplied by my attorney and I believe them to be correct and true. The Responses, where seeking information based upon my own personal knowledge, are true and accurate. I reserve the right to make changes in or addition to, or otherwise provide supplementary responses to, any of these Responses.

Subscribed and sworn to under penalty of perjury.

Dated: Mar 6, 2026
_____

By: _Adam Josephs_
Adam Josephs (Mar 6, 2026 11:29:30 PST)

Adam Josephs

Plaintiff-Relator

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 26, 2026, a copy of Plaintiff-Relator's Motion to Compel and the Declaration of Max E. Rodriguez in Support of Plaintiff-Relator's Motion to Compel were served on URS Federal Service International Inc. and Amentum Services Inc. by email to counsel of record. I further certify that on April 13, 2026, a copy of Plaintiff-Relator's Reply Brief in Further Support of Relator Adam Joseph's Motion to Compel and the Declaration of Max E. Rodriguez in Support of Relator's Reply Brief in Further Support of Relator's Motion to Compel were served on URS Federal Service International Inc. and Amentum Services Inc. by email to counsel of record.

/s/ Max Rodriguez
Max E. Rodriguez