CHAMBERS OF
CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_CJCChambers@mdd.uscourts.gov
(410) 962-4560

June 22, 2026

**MEMORANDUM TO PARTIES RE:**     *Adam Josephs v. Amentum Services Inc.,* et al.,
Civil Action No. SAG-25-1477

Dear Counsel:

Pending before the Court are two related motions: Plaintiff-Relator Adam Josephs' Motion to Compel (the "Motion"), ECF No. 118, and Defendant Amentum Services, Inc.'s and URS Federal Services International, Inc.'s Motion for Leave to File a Sur-reply in Opposition to Relator's Motion to Compel (the "Sur-reply Motion"), ECF No. 120. In accordance with Local Rule 104.8(c), the Motion includes memoranda supporting and opposing Plaintiff's requested discovery, as well as a certificate pursuant to Local Rule 104.7 that the parties held a conference to resolve their discovery disputes but remain at an impasse. *See* ECF No. 118. No hearing is necessary to resolve this dispute. Loc. R. 105.6 (D. Md. 2025).

For the reasons set forth below, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. The Sur-reply Motion is GRANTED.

## I.     Procedural History and Relevant Background

At the center of the discovery dispute between Plaintiff and Defendants Amentum Services, Inc. ("Amentum") and URS Federal Services International, Inc. ("URS") (collectively, the "Amentum Defendants") is a disagreement regarding the scope of permissible discovery following this Court's November 19, 2025, ruling on Defendants' motions to dismiss. ECF No. 90. In the Court's Memorandum Opinion and Order, it dismissed Defendants DynCorp International LLC ("DynCorp"), TD Supply Specialists ("TD Supply"), and Freedom Air Industries, Inc. ("Freedom Air") and allowed Plaintiff's False Claims Act ("FCA") claims to proceed only as to the subcontract stacking allegations against Amentum, URS, and Defendant Dallas Aviation, Inc. ("Dallas Aviation"). ECF No. 90. To put the Court's ruling on the motions to dismiss into context, I first begin with a general overview of the relevant allegations in Plaintiff's First Amended Complaint before turning to a summary of the Court's decision.

In the First Amended Complaint, Plaintiff alleges violations of the FCA arising from two contracts under the Air Force Contract Augmentation Program V ("AFCAP V"). Plaintiff alleges that URS, a subsidiary of Amentum, was awarded Contract FA 8051-20-D-0001 (the "URS

AFCAP V Contract") and DynCorp was awarded Contract FA 8051-20-D-0002. ECF No. 63 ¶ 81. Plaintiff alleges that under the URS AFCAP V Contract, the Department of Defense awarded URS a task order for the purchase of winter clothing items for Afghan evacuees as part of Operation Allies Welcome. ECF No. 63 ¶¶ 83–84. Thereafter, a representative from Amentum reached out to Plaintiff, who owns and operates a clothing distribution company, Suppliest Co. LLC ("Suppliest"), for a quote relating to an order of winter clothing items. ECF No. 63 ¶¶ 95–96. Plaintiff provided the representative with a confidential index of prices that included Suppliest's unique item numbers, descriptions, and pricing for each item. ECF No. 63 ¶ 98. Amentum invited Suppliest to submit a formal bid to supply the items. ECF No. 63 ¶¶ 102–04. Suppliest did so and Amentum selected Suppliest as the subcontractor to provide the winter clothing items. ECF No. 63 ¶ 116. Suppliest went on to bid and obtain subcontracts to supply clothing items to Amentum over 16 different purchase orders. ECF No. 63 ¶¶ 116–17.

Plaintiff alleges that after it provided its price index to Amentum, it began to receive communications from TD Supply, Dallas Aviation, and Freedom Air (the "Subcontractor Defendants") requesting price quotes for certain clothing items, including some of the very items that Suppliest had already been supplying to Amentum. ECF No. 63 ¶¶ 123, 130–31. Plaintiff alleges that the communications with these Subcontractor Defendants demonstrated that Amentum had shared Suppliest's confidential pricing information with the Subcontractor Defendants and referred them to Suppliest, so that they could fulfill purchase orders for subcontracts they were awarded. *See* ECF No. 63 ¶ 140. Plaintiff alleges that this "subcontract stacking scheme" ultimately resulted in artificially inflated costs for the federal government as the end customer. ECF No. 63 ¶ 140.

### A.    The Court's November 19, 2025, Memorandum Opinion

The Court dismissed three of the six defendants (DynCorp, TD Supply, and Freedom Air). *See* ECF No. 90 at 2.[1] With respect to DynCorp, the Court concluded that dismissal was appropriate because Plaintiff had not alleged "any involvement by DynCorp or its representatives" and that "all of the subcontracts pertinent to this case that Amentum awarded were awarded under the URS AFCAP V Contract." ECF No. 90 at 10. The Court also dismissed TD Supply and Freedom Air on the ground that Plaintiff did not sufficiently plead presentment as to these parties—a necessary element of an FCA claim. ECF No. 90 at 21. Specifically, the Court reasoned that Plaintiff's allegations relating to TD Supply and Freedom Air provided "additional evidence that subcontract stacking is a routine practice for Amentum" but the allegations failed to demonstrate that either TD Supply or Freedom Air engaged in subcontractor stacking as a routine practice themselves, and thus, the conduct alleged "could have constituted a one-time occurrence that, in neither case, was successful or resulted in presentment of a claim to the government." ECF No. 90 at 21.

What remains of Plaintiff's case is the subcontract stacking allegations against the Amentum Defendants and Dallas Aviation. The Court found that Plaintiff sufficiently alleged noncompliance with Federal Acquisition Regulation ("FAR") 52.244-5, which requires a prime

---

[1] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

contractor to select subcontractors on a competitive basis, because "Plaintiff has alleged that Amentum . . . sometimes chose to buy from a reselling subcontractor at a higher price rather than from another subcontractor directly at a lower price." ECF No. 90 at 15. The Court also found that Plaintiff sufficiently alleged noncompliance with FAR 52.203-7, which prohibits the inclusion of a kickback amount in a claim to a prime contractor or to the government, because "Plaintiff has alleged . . . that the difference in price [i.e. the higher price paid for goods from a reselling subcontractor] functions as a kickback to the reselling subcontractor." ECF No. 90 at 15.

### B.      Plaintiff's Discovery Requests to the Amentum Defendants

Following the Court's ruling, on January 30, 2026, Plaintiff served a request for production of documents on the Amentum Defendants. ECF No. 118 at 5. On February 9, 2026, Plaintiff served interrogatories on the Amentum Defendants. ECF No. 118 at 5. The discovery requests at issue seek documents and information concerning Plaintiff's theory that the Amentum Defendants engaged in a wide-ranging subcontract stacking scheme. Plaintiff has asked the Amentum Defendants to produce information pertaining not only to the URS AFCAP V Contract but to other contracts. Plaintiff has also asked for information regarding other subcontractors and the Subcontractor Defendants, including those that have since been dismissed from this case (i.e. TD Supply and Freedom Air).[2]

The Amentum Defendants object to Plaintiff's discovery requests and challenge Plaintiff's ability to obtain such discovery because, in their view, the only pertinent contract now at issue in this case is the URS AFCAP V Contract. ECF No. 118-2 at 2. Moreover, the Amentum Defendants contend that the sole remaining subcontractor defendant in this case is Dallas Aviation and that discovery should be tailored accordingly. ECF No. 118-2 at 2.

## II.      Analysis

The appropriate resolution of this discovery dispute falls somewhere between the parties' competing arguments. Plaintiff is correct that limiting all discovery in the manner that the Amentum Defendants request is too narrow. And the Amentum Defendants are correct that the Court's ruling on the motions to dismiss narrowed Plaintiff's case substantially and informs the appropriate scope of discovery.

The Court's analysis begins with Federal Rule of Civil Procedure 26(b)(1), which governs the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality is guided by several considerations: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "No single factor is designed to outweigh the other factors in determining whether the discovery

---

[2] In the interest of brevity, I have omitted the 26 specific discovery requests and responses at issue, 12 of which are document requests and 14 of which are interrogatories. ECF No. 118 at 6–13.

sought is proportional." *Jefferson v. Austin*, 345 F.R.D. 249, 252 (D.D.C. 2024) (citation modified). And the parties need not raise, and the Court need not address, each proportionality factor. *See Morocho v. Stars Jewelry by A Jeweler Corp.*, 345 F.R.D. 292, 295 (S.D.N.Y. 2024).

### A. Plaintiff's discovery requests are relevant.

I need not focus the analysis on relevance. In the context of discovery, "[t]he scope of relevanc[e] . . . . is broad, such that relevancy encompasses any matter that bears on or may bear on any issue that is or may be in the case." *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). With this broad framework in mind, I conclude that Plaintiff's discovery requests, which generally relate to information regarding the Amentum Defendants' contractual dealings for commercial goods and services involving Dallas Aviation and other subcontractors, directly bears on whether the Amentum Defendants engaged in a broader subcontract stacking scheme. But while I agree with Plaintiff that such discovery is relevant, I cannot conclude, as Plaintiff does, that all the information Plaintiff seeks "fall[s] comfortably within the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." ECF No. 118 at 17.

### B. Only discovery relating to the URS AFCAP V Contract and Subcontractor Defendants Dallas Aviation, TD Supply, and Freedom Air is proportional to the needs of the case.

Applying the relevant proportionality factors leads me to conclude that Plaintiff's discovery requests must be narrowed to the sole contract at issue in this case, the URS AFCAP V Contract, and the Subcontractor Defendants that Plaintiff specifically identified in the First Amended Complaint: Dallas Aviation, TD Supply, and Freedom Air.

#### 1. The URS AFCAP V Contract is the only pertinent contract in this case.

Plaintiff contends that the discovery it seeks is essential to proving the Amentum Defendants' pattern or practice of subcontract stacking, and that the requested discovery comports with this Court's findings that Plaintiff sufficiently alleged a subcontracting scheme that was a routine practice of the Amentum Defendants. ECF No. 118 at 15–16. But the subcontracting scheme that this Court held Plaintiff sufficiently alleged was related to the URS AFCAP V Contract only. The Court reasoned that, "all of the subcontracts pertinent to this case that Amentum awarded were awarded under the URS AFCAP V Contract, rather than the AFCAP V contract that was awarded to DynCorp," and dismissed DynCorp as a party.[3] ECF No. 90 at 10. Yet, Plaintiff continues to pursue discovery concerning contracts other than the URS AFCAP V Contract, which is the only contract at the core of Plaintiff's FCA claims. A review of Plaintiff's discovery requests demonstrates that only three document requests and two

---

[3] Plaintiff has since agreed not to seek discovery relating to the contract awarded to DynCorp or any documents related to claims under DynCorp-awarded contracts. ECF No. 118-5 at 4.

interrogatories out of the 26 total requests at issue are specifically limited to the URS AFCAP V Contract. *See* ECF No. 118 at 6–13.

Plaintiff points to several paragraphs in the First Amended Complaint to highlight what Plaintiff contends are allegations establishing that the Amentum Defendants engaged in a pattern or practice of subcontractor stacking. *See* ECF No. 118 at 17 (citing ECF No. 63 ¶¶ 121, 138, 140–41, 157, 163). However, these paragraphs discuss allegations specific to the URS AFCAP V Contract and the Subcontractor Defendants and make only vague references to "other similarly structured government contracts," ECF No. 63 ¶ 121, and "other Amentum prime contracts with similar subcontractor commercial purchases," ECF No. 63 ¶¶ 141, 163. To allow Plaintiff discovery into these other unidentified contracts on such threadbare allegations, when the Court has already held that the URS AFCAP V Contract is the only pertinent contract at issue, would run counter to basic discovery principles, the pleading standards under Federal Rule of Civil Procedure 9(b), and Fourth Circuit precedent interpreting the same.

Discovery regarding contracts and subcontractors that Plaintiff has not identified, and cannot identify, is inherently disproportional to the needs of the case, particularly where, as here, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud allegations with particularity. In FCA cases, courts require the plaintiff to satisfy Rule 9(b)'s heightened pleading standard in part to "stop fraud actions where everything is learned after discovery (i.e., fishing expeditions)." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022); *see also United States ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) (holding that relators' FCA allegations regarding fraudulent inducement were so inadequate that "if allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."); *Harison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783, 789 (4th Cir. 1999) (affirming dismissal of count that involved allegations similar to the subcontract stacking scheme here because the complaint lacked allegations regarding "who ordered the subcontractors to purchase items, which subcontractors were so ordered, when they were ordered, [and] what they were ordered to purchase").

Plaintiff and the Amentum Defendants both point to *U.S. ex rel. Wheeler v. Acadia Health Co., Inc.*, 127 F.4th 472, 488 (4th Cir. 2025) as support for their positions. In *Wheeler*, the Fourth Circuit rejected the plaintiff's attempt to reach defendant Acadia's nationwide offices by alleging specific examples of fraud at individual clinic locations and broadly alleging that Acadia maintained a "corporate policy" of falsifying group therapy notes. *Id.* The Court concluded that "A mere allegation that a corporate policy exists, with nothing more, is insufficient. Rule 9(b) requires a False Claims Act whistleblower to describe the fraud with sufficient particularity." *Id.* Plaintiff relies on *Wheeler* to argue that "relators may plead representative examples of false claims that reflect a broader pattern or corporate policy" and that it has done so here "with detailed factual content in the [First Amended Complaint]." ECF No. 118 at 17. The Amentum Defendants counter that *Wheeler* shows that the single representative example of alleged subcontract stacking under the URS AFCAP V Contract cannot support an inference of a corporate-wide policy of subcontract stacking by the Amentum

Defendants across all other "similar" contracts and among all subcontractors. ECF No. 118-2 at 6.

I find the Amentum Defendants' argument persuasive. As explained above, the First Amended Complaint contains detailed allegations relating only to the URS AFCAP V Contract and subcontracts awarded under this Contract. Indeed, this was precisely the basis for the Court's dismissal of DynCorp. Plaintiff's pattern-or-practice allegations regarding subcontract stacking by the Amentum Defendants in other unidentified "similarly structured" government contracts are too imprecise to support far-reaching discovery in this regard and are thus akin to the allegations that the Fourth Circuit rejected in *Wheeler*. Accordingly, Plaintiff's discovery requests concerning prime contracts, or other contracts similarly structured to the URS AFCAP V Contract, are denied. Plaintiff is limited to discovery concerning the URS AFCAP V contract and subcontracts, task orders, or other modifications awarded to the Subcontractor Defendants under the URS AFCAP V Contract, as further explained below.

> **2. Discovery relating to Subcontractor Defendants Dallas Aviation, TD Supply, and Freedom Air, is within the scope of permissible discovery.**

Whether Plaintiff may obtain discovery related to Dallas Aviation and the now-dismissed Subcontractor Defendants, TD Supply and Freedom Air, regarding the URS AFCAP V Contract presents a closer question. Ultimately, however, I find that such discovery is proportional to the needs of the case.

First, discovery regarding the specifically identified Subcontractor Defendants is important to the issues in this case. Plaintiff's First Amended Complaint describes in detail an alleged subcontract stacking scheme under the URS AFCAP V Contract that extends beyond Dallas Aviation to include TD Supply and Freedom Air. Plaintiff's First Amended Complaint establishes the subcontracting scheme allegedly orchestrated by the Amentum Defendants. *See generally* ECF No. 63 ¶¶ 121–72. And, while the Court dismissed TD Supply and Freedom Air as parties, it did not reject Plaintiff's allegations that the Amentum Defendants provided TD Supply and Freedom Air with the price index from Suppliest and that TD Supply and Freedom Air then attempted to resell items on the index to Amentum. ECF No. 90 at 21. The Court expressly stated that these allegations "provide[d] additional evidence that subcontract stacking is a routine practice for Amentum . . . ." *Id.* Discovery regarding the extent of the Amentum Defendants' alleged subcontract stacking under the URS AFCAP V Contract seems wholly appropriate, if not essential, to Plaintiff's ability to prove any subcontract stacking scheme.

Here, too, the Amentum Defendants argue that Plaintiff cannot seek broad discovery as to all the Subcontractor Defendants on a loosely pled pattern-or-practice allegation. *See* ECF No. 118-2 at 6. But unlike the nondescript allegations relating to other government contracts, Plaintiff has alleged more than a general corporate policy regarding subcontract stacking by the Amentum Defendants under the URS AFCAP V Contract. *Wheeler* thus supports the Court's view that discovery requests tailored to the URS AFCAP V Contract and the Subcontractor Defendants are within the scope of permissible discovery. Narrowing Plaintiff's discovery

requests in this way limits any potential fishing expedition on Plaintiff's part relating to contracts and subcontractors not specifically alleged in the First Amended Complaint.

Second, discovery concerning the URS AFCAP V Contract and the Subcontractor Defendants is within the Amentum Defendants' possession and control. Amentum was awarded the URS AFCAP V Contract and is the party with greater access to materials concerning this contract and the Subcontractor Defendants with whom it worked. This information asymmetry "mean[s] that the burden of responding to discovery lies heavier on the [Amentum Defendants] and properly so." Fed. R. Civ. P. 26 advisory committee's note to the 2015 amendment. That the Plaintiff may obtain some overlapping discovery from non-parties, like the federal government or other third parties, does not relieve the Amentum Defendants of their responsibility to participate in discovery by providing the requested information.

### 3. The Court grants the Amentum Defendants' Motion for Leave to File a Sur-reply, and has considered the parties' sur-reply briefing.

In the interest of completeness and evaluating this discovery dispute on a full record, I have considered the Amentum Defendants' Sur-reply Motion, ECF No. 120, Plaintiff's Partial Opposition to the Amentum Defendants' Motion for Leave to File a Sur-reply, ECF No. 121, and the Amentum Defendants' Reply in Support of their Motion for Leave to File a Sur-reply, ECF No. 122. The parties spend much of their sur-reply briefing disputing whether, and to what extent, Plaintiff raised pattern-or-practice allegations in the First Amended Complaint, and whether the Amentum Defendants adequately challenged such allegations at the motion to dismiss stage. Plaintiff argues that because the Amentum Defendants did not challenge Plaintiff's pattern-or-practice allegations in their motion to dismiss, they have waived all such arguments in discovery. *See* ECF No. 118-5 at 6.

I decline to find that any waiver occurred that would preclude the Amentum Defendants from objecting to Plaintiff's discovery requests, nor do I find that any waiver occurred here because of the Amentum Defendants' failure to seek a protective order. At bottom, the Amentum Defendants object to Plaintiff's discovery requests on the ground that the requests are disproportionate to the needs of the case because the requests extend to contracts and parties either not pled with particularity in the First Amended Complaint or now dismissed. This argument is squarely rooted in Federal Rule of Civil Procedure 26(b)(1) and both "the parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *See* Fed. R. Civ. P. 26 advisory committee's

note to the 2015 amendment. The Amentum Defendants' Motion for Leave to File a Sur-reply is GRANTED.

Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely,

/s/

Chelsea J. Crawford
United States Magistrate Judge