# Morgan Lewis

**Douglas W. Baruch**
+1.202.739.5219
douglas.baruch@morganlewis.com

**Jennifer M. Wollenberg**
+1.202.739.5313
jennifer.wollenberg@morganlewis.com

July 15, 2026

<u>**VIA E-FILING**</u>

Honorable Chelsea J. Crawford, United States Magistrate Judge
United States District Court for the District of Maryland

Re:     <u>*Adam Josephs v. Amentum Services, Inc., et al.*</u>, No. 25-cv-1477

Dear Judge Crawford:

Pursuant to this Court's Order, ECF 131, we provide the following position statement on behalf of Amentum Services, Inc. and URS Federal Services International, Inc. (the "Amentum Defendants"). As partially illustrated below, Relator's discovery complaints and grievances are an unfounded and weak attempt to escape blame for Relator's failure to recognize the limited nature of his remaining claims, failure to review and/or understand the trove of documents already produced, and failure to timely pursue discovery. At bottom, as the Court recently confirmed, this action is limited to a (mistaken) "subcontract stacking" theory involving one task order under one contract and three Amentum subcontractors. Even if true as to the subcontractors at issue (which it is not), the potential damages would be limited to mark-ups on purchases of goods such as raincoats and household items, which would amount to a tiny fraction (~.0001) of the overall $900 million contract value. Relator stubbornly refuses to recognize these limitations and instead chooses to misrepresent the Amentum Defendants' discovery efforts and pursue "discovery on discovery." Relator's accusations are meritless, and his demands are not proportional to the scope of this case.

## Attorneys' Eyes Only ("AEO") Designations (ECF 126 at 4)

The parties first discussed an AEO confidentiality designation during a conference on February 5, 2026. The Amentum Defendants anticipated that such a designation would be needed for a number of documents given the allegations in this case—wherein Relator (inaccurately) alleges that the Amentum Defendants engaged in anticompetitive behavior by sharing his Company's information with other Amentum vendors, including Dallas Aviation. Thereafter, the Court entered an agreed Protective Order, which specifically states that a designation "may be challenged upon motion" and that "[t]he provisions of Fed.R. Civ. P. 37(a)(5) apply to such motions." ECF 106, 107.

The Amentum Defendants repeatedly have told Relator that he should comply with that Order and initiate that process if he wishes to challenge specific AEO designations. Relator has not done so. In fact, other than referencing documents he signed, Relator has not identified any AEO-designated documents he would challenge. And with respect to the documents Relator referenced, the designation was chose because—as explained multiple times to Relator—those documents were produced not only to Relator but also to Dallas Aviation. Moreover, Relator has not explained how he is prejudiced by the designation, given that he has his own copies of the documents he signed.

## Original File Names/Metadata (ECF 126 at 4)

This issue also dates back to the February 5 conference, during which the parties discussed a simplified production protocol. On March 16, the parties discussed this again, and Defendants raised the question of bates-labeling. Relator's counsel expressed surprise at the question and admitted

**Morgan, Lewis & Bockius LLP**

1111 Pennsylvania Avenue, NW
Washington, DC  20004          **T** +1.202.739.3000
United States                          **F** +1.202.739.3001

unfamiliarity with the local guidance that contemplates a natives-only production and alleviating the burden and expense associated with an outside vendor where possible. Ultimately, the parties agreed to a bates-labeled production. Separately, the Amentum Defendants offered to produce certain standard metadata if Relator was prepared to do the same. In making that offer, which was accepted by Relator, we specifically noted that we were speaking about only custodial emails and only on behalf of our clients—the Amentum Defendants—given the concern about burdening Dallas Aviation with the unnecessary expense associated with a vendor. The Amentum Defendants' productions, the first of which was only days later, have been made in accordance with this agreed-on protocol.[1]

When Relator began complaining about the lack of metadata for the non-custodial portions of the Amentum Defendants' production, the Amentum Defendants reminded Relator of this agreement and also explained to Relator that any metadata associated with these non-custodial documents—e.g., the date when a particular copy of the executed prime contract was saved—can have no bearing on this litigation. Thereafter, the Amentum Defendants asked Relator to explain why he kept raising this issue and to identify what type of metadata he thought would be important and for what documents. Only recently did Relator identify that metadata (i.e., "original file names")—and the documents (i.e., a listing of nearly every non-custodial document produced by the Amentum Defendants). Relator has yet to explain why he would need "original file names" and, frankly, the request makes no sense. The non-custodial documents produced—such as purchase orders, policies, standard supplier forms, and basic contract documents—are self-explanatory. For example, Relator complains that he does not have the "original file name" for the prime contract at issue. Surely, in the last four months, Relator has been able to recognize the prime contract from the face of the document and does not need the file name of "Contract - FA805120D0001- fully executed.pdf" to do so. Relator's request for "original file names" is contrary to the agreed protocol and, in any event, unnecessary.

### Attachments (ECF 126-2 at 8)

Relator's recent complaints about so-called "missing attachments" are unfounded. Indeed, none of the items on Relator's extensive list is missing. With respect to many of the purportedly missing attachments, in his haste to cast blame, Relator fails to recognize that the very next document in the production is a bates-labeled slipsheet identifying that the attachment, often an Excel spreadsheet, was produced in native format. Notably, Relator made similar unfounded accusations months ago when Relator (wrongly) accused the Amentum Defendants of failing to produce the native files corresponding with bates-labeled slipsheets.

### Custodial Email Productions (ECF 126 at 3, 4, 7)

Relator falsely claims that the Amentum Defendants have refused to produce custodial emails that they have identified as responsive to Relator's document requests. That is untrue. Indeed, the Amentum Defendants told Relator the opposite on the parties' last conference, explaining that they had one additional custodial email production to complete. Following completion of that review (including confidentiality designation determinations) earlier this week, the emails were produced today.

Likewise, Relator has no basis for insisting on discovery-on-discovery via "hit" counts or the like. Nor is there any basis to force the Amentum Defendants to re-do their custodial searches with new or additional search terms. Relator's accusation that "the search terms that the Amentum Defendants

---

[1] The Amentum Defendants have since learned that Relator often mischaracterizes the parties' conferences and have demanded that the parties record their meet and confer sessions.

had run were not picking up plainly relevant emails" is unsubstantiated and flat wrong. The search parameters used by the Amentum Defendants picked up all of the emails that Relator identified.

## "Basic Documents Relevant to the Claims" (ECF 126 at 4, 7)

Relator's accusation that there is any production failure with respect to key contract documents also is wrong. In fact, the Amentum Defendants prioritized their production to get key prime and subcontract documents produced. The Amentum Defendants have reviewed Relators' list of documents that Relator claims are missing from the production, and none is missing. For example, *four months ago*, the Amentum Defendants produced all of the prime contract documents, including modifications, relevant to this suit. While there are other modifications, they have no relevance to Relator's claims, which Relator should know because (1) the Amentum Defendants have explained this and (2) the government's publicly-available resources describe the modifications (many of which are simply incremental funding increases). *Months ago*, the Amentum Defendants also produced and specifically identified for Relator all of the purchase orders issued to Dallas Aviation relevant to Relator's only remaining theory—i.e., "subcontract stacking." Likewise, *months ago*, the Amentum Defendants specifically identified and produced the invoices to the Government that correspond with those purchase orders.

Relator's accusation that the Amentum Defendants have not produced documents relevant to the "indirect costs billed to the government" is without merit as well: First, Relator has not identified any document request that covers this ask. If Relator wanted to know the final approved and applicable indirect rates for the years at issue, he could have served (but did not) some discovery request—either a document request or better yet an interrogatory—actually seeking that. Second, the invoices produced by the Amentum Defendants in March include provisional indirect costs billed to the Government, belying Relator's (new) claim that he does not have adequate information to approximate a "reasonable and informed demand to engage in settlement discussions."

## TD Supply and Freedom Air Materials (ECF 126 at 2)

We would note that the Amentum Defendants already produced—months ago—many dozens of documents referencing one or both of these entities. Likewise, there are no additional productions for the Amentum Defendants to make in response to a number of requests, as the prime contract documents, organizational charts, policies, etc. are not subcontractor-specific. Beyond all of these documents, which Relator has had for months, Relator now also has the "vendor file" documents for each entity. More importantly, as explained in prior briefing, ECF 118-2 at 10-11, the Amentum Defendants do not have all the information Relator needs to do even an initial assessment of alleged "subcontract stacking" involving these entities. So, whether Relator has made any progress in obtaining such information—and, if not, whether he has engaged in diligent efforts to obtain it—are key inquiries that should be considered before making any adjustments to the schedule.

Respectfully submitted,

Douglas W. Baruch
Jennifer M. Wollenberg

*Counsel for the Amentum Defendants*